**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GREGORY WOODS,                        )
                                      )
                Plaintiff,            )
                                      )
                v.                    )       No. 13 C 2607
                                      )
COOK COUNTY, ILLINOIS, ANTONIO        )
RUBINO, NICOLE PAGANI, JENNIFER       )
COLEMAN,                              )
                                      )
                Defendants.           )


**MEMORANDUM OPINION**

Before the court are motions to dismiss filed by defendants
Jennifer Coleman and Cook County, Illinois. For the reasons
explained below, we deny Coleman's motion, and grant in part, and
deny in part, Cook County's motion.

**BACKGROUND**

In April 2011, defendant Assistant State's Attorney ("ASA")
Jennifer Coleman was assigned to review a criminal case charging
Charles Callahan with damaging plaintiff Gregory Woods's vehicle.
(Compl. ¶ 8-9.) In connection with the prosecution, Woods had
attempted to give the ASA handling the case copies of damage
estimates for his vehicle. (Id. at ¶ 13.) He was told that the
prosecution did not need those documents. (Id.) On June 28, 2011,
Coleman left Woods a voice-mail message asking him to fax her the
estimates. (Id. at ¶ 11.) Woods called back later that same day

and left a message for Coleman in which he "express[ed] his
frustration with how the Cook County State's Attorney's Office and
ASA Coleman were handling" the case. (<u>Id.</u> at ¶ 12.) When Coleman
returned Woods's call — apparently that same day — "the
conversation deteriorated, with accusations of incompetence being
lodged by Mr. Woods against members of the State's Attorney's
Office, and voices being raised on both ends of the telephone."
(<u>Id.</u> at ¶ 14; <u>see also</u> <u>id.</u> at ¶ 15 (alleging that Woods told
Coleman that "he was doing all the work relative to this
prosecution, and asked what his tax dollars were paying for . . .
.").) In response to Woods's accusations, Coleman stated that she
had considered "upgrading" the charge against Callahan to felony
theft, "but that because of [Woods's] 'smart attitude,' she would
now reconsider that." (<u>Id.</u> at ¶ 15.) After Coleman hung up, Woods
called back and told her that "she should be doing her job and
upgrading the charges to a felony against Mr. Callahan." (<u>Id.</u> at
¶¶ 16-17.) Woods alleges that he did not "threaten to harm"
Coleman at any point during their communications. (<u>Id.</u> at ¶ 18.)

On July 8, 2011, Cook County Sheriff's Investigators Antonio
Rubio and Nicole Pagani met with Coleman. (<u>Id.</u> at ¶ 19.) During
the meeting, Coleman played Woods's voice-mail message. (<u>Id.</u> at ¶
21.) When Woods appeared at the next hearing in Callahan's
criminal case he was arrested and charged with threatening a public
official (i.e., Coleman). (<u>Id.</u> at ¶¶ 21-22.) He was held at Cook

County Jail for approximately nine months before he was tried and found not guilty. (Id. at ¶¶ 23-24.) Woods has filed a two-count complaint against Coleman, Rubio, Pagani, and Cook County for false arrest under § 1983 (Count I) and state-law malicious prosecution (Count II). Rubio and Pagani have answered Woods's complaint; Coleman and Cook County have filed separate motions to dismiss. Coleman argues that she is entitled to immunity and seeks to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Cook County concedes that it is a necessary party as a potential indemnitor, but denies that it is proper defendant to Woods's substantive claims.

## A.    Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all

factual allegations in the complaint. <u>Iqbal</u>, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pled factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. <u>Capitol Leasing Co. v. FDIC</u>, 999 F.2d 188, 191 (7th Cir. 1993). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. <u>Id.</u>

## B. Whether Woods's Claims Against Coleman Are Barred By Absolute Prosecutorial Immunity

"A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." <u>Fields v. Wharrie</u>, 672 F.3d 505, 510 (7th Cir. 2012) (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 410 (1976)). "Whether or not an action falls within the scope of his prosecutorial duties depends upon its function." <u>Id.</u> (citing <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 342–43 (2009)). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." <u>Id.</u> (citing <u>Imbler</u>, 424 U.S. at 430, 431 n.

33).  Absolute immunity "encompasses any action directly relevant
to a prosecutor's ability to conduct a trial."  <u>Id.</u> at 511; <u>see
also</u> <u>Imbler</u>, 424 U.S. at 430 (prosecutors are entitled to absolute
immunity for activities that are "intimately associated with the
judicial phase of the criminal process").  It does not include: (1)
administrative actions, <u>see</u> <u>Fields</u>, 672 F.3d at 510-11; and (2)
investigative actions "'that might give [the prosecutor] probable
cause to recommend that a suspect be arrested . . . .'"  <u>Id.</u> at 511
(quoting <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993)); <u>see
also</u> <u>Burns v. Reed</u>, 500 U.S. 478, 496 (1991) (prosecutor not
entitled to absolute immunity for legal advice given to police
officers).

Coleman argues that she is entitled to absolute immunity
because her conduct "was in connection with the management of the
underlying Property Damage Case, including Plaintiff's complaints
about the way in which the prosecution was being carried out and
his demand that she upgrade the charges in the prosecution in which
he was the complaining witness to felony charges." (Coleman's Mem.
at 6.)  We believe that she is conflating two distinct proceedings.
Woods's claims are not based upon Coleman's handling of the
criminal case against Callahan, although that was the subject of
his complaints.  Instead, his claims are based upon his allegation
that Coleman participated in the decision to arrest him without
probable cause for threatening a public official.  As it pertains

to that charge, the complaint alleges that Coleman acted as a witness — Woods's comments *to Coleman* were the basis for the charge against him — not an advocate. <u>Cf.</u> <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129-31 (1997) (holding that a prosecutor who attested to facts in support of an arrest warrant was not entitled to absolute immunity: "[t]estifying about facts is the function of the witness, not of the lawyer."). At this stage of the case, we conclude that Coleman has not satisfied her burden to show that she is entitled to absolute immunity. <u>See</u> <u>Burns</u>, 500 U.S. at 486 ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.").

**C.   Whether Coleman is Entitled to Qualified Immunity**

A prosecutor who participates in the investigative phase of a criminal proceeding may still be entitled to qualified immunity. <u>See</u> <u>Fields</u>, 672 F.3d at 511. A "plaintiff seeking to defeat a defense of qualified immunity must establish two things: first, that she has alleged a deprivation of a constitutional right; and second, that the right in question was 'clearly established.'" <u>Miller v. Harbaugh</u>, 698 F.3d 956, 962 (7th Cir. 2012) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)). Coleman argues that Woods cannot satisfy the first prong because he has not sufficiently alleged that she participated in his arrest and detention. (<u>See</u> Coleman's Mem. at 10.) Woods's theory is that Coleman directed Rubino and Pagini to arrest him, and/or gave the

officers dubious legal advice about the criminal consequences of Woods's non-threatening message. Coleman argues that these allegations are insufficient to state a § 1983 violation, citing Anderson v. Simon, 217 F.3d 472, 476 (7th Cir. 2000). The plaintiff in Anderson alleged that a prosecutor ordered police officers to hold him without probable cause pending a lineup. Id. The Anderson Court held that this was insufficient to state a claim against the prosecutor because the plaintiff had not alleged that the officers had a duty to obey him. See id. ("The police, not the state's attorney's office, decide whether to detain an individual following arrest but prior to formal charging . . . and the police are not obligated to adhere to the suggestions of the state's attorney's office, a separate and distinct organization with no command authority over the Chicago Police Department.") (internal citation omitted). However, four years after deciding Anderson, our Court of Appeals reversed a decision granting a prosecutor qualified immunity under similar circumstances. See Kijonka v. Seitzinger, 363 F.3d 645, 648 (7th Cir. 2004). In Kijonka, the Court held that the defendant prosecutor was not entitled to qualified immunity where the plaintiff alleged that the defendant told police officers to arrest him without probable cause. Id. There is no suggestion in the Kijonka Court's opinion that the police officers were required to obey the prosecutor. The parties have not attempted to explain how (or if) these cases can be

reconciled: Woods does not address <u>Anderson</u>, and Coleman does not address <u>Kijonka</u>. We believe that it would be imprudent to try to reconcile these cases without the benefit of properly developed arguments and a factual record. We anticipate that Coleman's communications with the other defendants will be highly relevant to her claim for qualified immunity. <u>See, e.g.</u>, <u>Alvarado v. Litscher</u>, 267 F.3d 648, 651 (7th Cir. 2001) ("[A]n immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate . . . ."). Coleman suggests that she simply played Woods's voice-mail message and let the deputies come to their own conclusions, (<u>see</u> Coleman's Reply at 4), but Woods has no way to test that assertion without discovery. Coleman's motion to dismiss Woods's complaint based upon qualified immunity is denied.

**D.  Whether Woods's Malicious-Prosecution Claim is Barred by Sovereign Immunity**

Finally, Coleman argues that Woods's state-law malicious-prosecution claim is really a claim against the State of Illinois, which is barred by sovereign immunity. An ASA is a State official, rather than a local or county official. <u>See</u> <u>Sneed v. Howell</u>, 716 N.E.2d 336, 340 (Ill. App. Ct. 1999). In <u>Healy v. Vaupel</u>, 549 N.E.2d 1240 (Ill. 1990), the Illinois Supreme Court considered three criteria to determine whether a claim, nominally against an individual State official, is really a claim against the State:

> [W]hen "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his

authority through wrongful acts; (2) the duty alleged to
have been breached was not owed to the public generally
independent of the fact of State employment; and (3)
where the complained-of actions involve matters
ordinarily within that employee's normal and official
functions of the State, then the cause of action is only
nominally against the employee."

Healy, 549 N.E.2d at 1247 (quoting Robb v. Sutton, 498 N.E.2d 267,

272 (Ill. Ct. App. 1986). The Illinois Court of Claims has

exclusive jurisdiction over tort claims against the State of

Illinois. See Illinois State Lawsuit Immunity Act, 745 ILCS 5/1

("Except as provided in . . . the Court of Claims Act . . . the

State of Illinois shall not be made a defendant or party in any

court."); Court of Claims Act, 705 ILCS 505/8(d) (limiting damages

against the State for tort claims and vesting the Court of Claims

with exclusive jurisdiction). Several Illinois courts have applied

this analysis to dismiss state-law claims against prosecutors. See

White v. City of Chicago, 861 N.E.2d 1083, 1095-96 (Ill. Ct. App.

2006); Price v. State of Illinois, 820 N.E.2d 104, 106-07 (Ill. Ct.

App. 2004); Sneed, 716 N.E.2d at 341 (Ill. Ct. App. 1999). There

is, however, an exception under Illinois law for unconstitutional

actions by state officials, or actions that are illegal or

otherwise without authority. See Feldman v. Ho, 171 F.3d 494, 498

(7th Cir. 1996) ("'Whenever a state employee performs illegally,

unconstitutionally, or without authority, a suit may still be

maintained against the employee in his individual capacity and does

not constitute an action against the State of Illinois.'") (quoting

Wozniak v. Conry, 679 N.E.2d 1255, 1259 (Ill. Ct. App. 1997)); see

also <u>Kitchen v. Burge</u>, No. 10 C 4093, 2012 WL 346450, *5 (N.D. Ill. Feb. 1, 2012) (distinguishing <u>White</u>, *supra*, based upon this exception).

Until recently, our Court of Appeals construed the Court of Claims Act to limit federal subject-matter jurisdiction. <u>See Benning v. Board of Regents of Regency Universities</u>, 928 F.2d 775, 777-80 (7th Cir. 1991); <u>Magdziak v. Byrd</u>, 96 F.3d 1045, 1049 (7th Cir. 1996); <u>Richman v. Sheahan</u>, 270 F.3d 430, 433-34 (7th Cir. 2001); <u>Turner v. Miller</u>, 301 F.3d 599, 602-03 (7th Cir. 2002); <u>Brooks v. Ross</u>, 578 F.3d 574, 577 (7th Cir. 2009). But in two recent cases the Court rejected this analysis, albeit without expressly addressing its prior authorities. <u>See Rodriguez v. Cook County, Ill.</u>, 664 F.3d 627, 631-32 (7th Cir. 2011); <u>Fields v. Wharrie</u>, 672 F.3d 505, 518 (7th Cir. 2012). The plaintiff in <u>Rodriguez</u> successfully appealed his murder conviction and then sued the individuals responsible for his prosecution. <u>Rodriguez</u>, 664 F.3d at 629. After affirming dismissal of the plaintiff's federal claims, the Court turned to his state-law claims against three state prosecutors. <u>Id.</u> at 629-31. The district court had dismissed these claims on sovereign-immunity grounds consistent with the authorities we have just cited. <u>See id.</u> at 631 (quoting a portion of the district court's decision citing the State Lawsuit Immunity Act and <u>Sneed</u>, cited *supra*). Although our Court of Appeals ultimately affirmed the dismissal, it rejected the district

court's sovereign-immunity analysis.  According to the <u>Rodriquez</u> Court, the district court had erroneously assumed that the plaintiff had sued the prosecutors in their official capacities. <u>Id.</u>  Such a suit is really an action against the State, which "belongs in state court" pursuant to the Eleventh Amendment.  <u>Id.</u> (citing <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989));[1] <u>see also</u> U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."); <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890) (applying sovereign immunity to claims against the state by its own citizens).  The Court instead construed the plaintiff's complaint to seek damages from the prosecutors in their individual capacities, removing any conflict with the Eleventh Amendment.  <u>Id.</u> at 631-32; <u>see also</u> <u>Bates v. Wisconsin Dept. of Workforce Development</u>, 375 Fed. Appx. 633, 636 (7th Cir. 2010) ("[T]he Eleventh Amendment does not bar a state-law claim against a state employee in an individual capacity.") (collecting cases).  That

---

[1] In <u>Will</u>, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will</u>, 491 U.S. at 71.  Although the <u>Rodriquez</u> Court did not cite a particular portion of <u>Will</u>, we assume that it was relying on the Supreme Court's discussion of "official capacity" suits. <u>See id.</u> at 71 (citing the general principle that an official-capacity suit against a state official is a suit against the state, the Court rejected the petitioner's argument that a state official sued in his "official capacity" is a "person" under § 1983, even if the state is not).

being the case, there was no impediment to proceeding in federal court:

> [I]f Illinois had purported to insist that all civil
> litigation against prosecutors occur in state courts,
> that could not curtail federal jurisdiction. Congress,
> not the states, determines the jurisdictional authority
> of the federal courts. This means that, apart from
> invoking their rights under the eleventh amendment,
> states cannot insist that any particular category of
> litigation be conducted only in state court.

Id. at 632. Applying Rodriguez, the Court in Fields held that the district court had supplemental jurisdiction over the plaintiffs' state-law claims against two ASA's: "[o]ur recent decision in Rodriguez v. Cook County, Illinois makes clear that a state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case." Fields, 672 F.3d at 518.

The parties have not attempted to reconcile Rodriguez and Fields with prior Seventh Circuit cases, and it is unclear to us whether they can be reconciled. Coleman essentially asks us to ignore Rodriguez and Fields in favor of the earlier cases. (See Coleman's Reply at 11.) We decline to do so. The panel in Fields, at least, was clearly aware that the Court had treated the Court of Claims Act as a jurisdictional bar in previous cases. The district court had thoroughly analyzed the sovereign-immunity question in an opinion citing the Court's opinions in Richman and Brooks. See Fields v. City of Chicago, 805 F.Supp.2d 536, 548-49 (N.D. Ill. 2011). It declined to dismiss the plaintiff's claims, but on grounds consistent with the reasoning in those cases. Id. at 549

(concluding that the plaintiff's claim was not against the State because the "[p]rosecutors went beyond the scope of their authority through wrongful acts . . . ."). After the parties in <u>Fields</u> fully briefed and argued defendant's appeal, the defendant moved to file a supplemental brief addressing the tension between <u>Rodriquez</u> and <u>Brooks</u>. <u>See</u> Mot. of Def.-Appellants for Supp. Briefing, <u>Rodriquez v. Cook County, Illinois</u>, Case No. 11-2035, Dkt. 20. The Court denied the motion to supplement without discussion and expressly relied on <u>Rodriquez</u>'s analysis in its published opinion. The defendant raised the issue again in a petition for rehearing *en banc*, which the Court again denied.[2] <u>Rodriquez</u> and <u>Fields</u> appear to reflect the Court's current interpretation of state-law sovereign immunity. Because the Eleventh Amendment does not apply to Woods's individual-capacity claim against Coleman, we may exercise supplemental jurisdiction over that claim.

There is less at stake here than might appear at first blush. As we understand <u>Rodriquez</u> and <u>Fields</u>, state-law sovereign immunity is still a defense to a state-law claim against a state official in federal court. The *venue* for Woods's state-law claim does not affect the relief that he entitled to obtain from Coleman. As a defense, rather than a limit on subject-matter jurisdiction, state-law sovereign immunity may be waived. But Coleman has not waived

---

[2] Coleman's counsel's failure to cite <u>Fields</u> and <u>Rodriquez</u> in his opening brief is inexcusable. He represented the defendants on appeal in <u>Fields</u>, argued the case before the Court, and drafted the motions for supplemental briefing and rehearing *en banc*.

it.  See <u>Fontano v. Godinez</u>, No. 12-CV-3042, 2012 WL 2459399, *2
(C.D. Ill. June 27, 2012) ("Reasonable minds might debate whether
Defendants' argument is a jurisdictional one or an affirmative
defense subject to waiver, but the debate will not affect the
outcome here since Defendants have not waived the argument.").  So,
if Woods's claim against Coleman is really a claim against the
State under <u>Healy</u>, then she would be entitled to judgment on
Woods's malicious-prosecution claim.  But as we discussed in
connection with Coleman's other arguments, it would be premature to
decide this issue on the pleadings alone.  Woods alleges that
Coleman participated in the decision to arrest him without probable
cause.  This alleged constitutional violation is also the basis for
Woods's malicious-prosecution claim.  This is sufficient, at the
pleadings stage, to bring Woods's claim within the exception to
sovereign immunity for constitutional violations.  See <u>Feldman</u>, 171
F.3d at 498; <u>Fields</u>, 805 F.Supp.2d at 548-49 (denying motion to
dismiss where the plaintiff alleged that the defendant prosecutors
"knowingly fabricated evidence and withheld exculpatory evidence:"
"[p]rosecutors act beyond the scope of their authority through
wrongful acts when participating in such conduct.").

**E.  Cook County's Motion to Dismiss**

Cook County argues that it is not a proper defendant to
Woods's substantive claims: he does not allege that the County
itself did anything wrong. (<u>See</u> Cook County's Mot. at 2-3.) Woods

effectively concedes the point in his response brief. (See Woods's Resp. at 12.) But the parties appear to agree that Cook County is a necessary party as a potential indemnitor of the other defendants. (See id.; Cook County's Mot. at 3-4.) We will grant Cook County's motion to dismiss and give Woods leave to file an amended complaint clarifying that Cook County is being sued as indemnitor (e.g., by amending the complaint to add a third count for indemnification). Cook County also asks for an order that it is "not subject to discovery." (Cook County's Mot. at 4.) It has not cited any legal authority supporting its request, and the practical consequences of such an order are unclear. Therefore, we deny its request.

## CONCLUSION

Defendant Jennifer Coleman's motion to dismiss [15] is denied. Defendant Cook County, Illinois's motion to dismiss [18] is granted in part and denied in part. The plaintiff's complaint is dismissed as to Cook County insofar as it is named as a defendant to the plaintiff's substantive claims. Cook County's request for an order that it is not subject to discovery is denied. The plaintiff is directed to file an amended complaint by February 21, 2014 clarifying that he is joining Cook County as a potential indemnitor and not as a defendant to his substantive claims. A status hearing is set for February 5, 2014 at 11:00 a.m.

DATE:        January 30, 2014

ENTER:

John F. Grady, United States District Judge